The conclusions to which I have come upon the examination of this case are the following:
1. As the offense was committed while the act of 1860 was in full operation, the judgment should have been the one prescribed by that act, namely, that the convict should suffer the punishment of death, and that he should be confined at hard labor in the State prison until such punishment should be inflicted; but that he should not be executed, in pursuance of such sentence, within one year from the day of passing such sentence, nor until the whole record of the proceedings should be certified by the clerk of the court of oyer and terminer of Kings county, under the seal *Page 134 
thereof, to the governor of this State, nor until a warrant should be issued by the governor under the great seal of the State, directed to the sheriff of the county in which the State prison shall be situated, commanding the said sentence of death to be executed. The point that the act does not, in terms, prescribe the punishment of death, has been considered by this court and held not to be tenable. (Lowenberg v. The People,
27 N.Y.R. 336.)
The judgment of the oyer and terminer, which was affirmed by the supreme court, condemned the convict absolutely to the punishment of death by hanging on a day about five months after the conviction, without requiring any warrant to be issued by the governor. This was a wide departure from the mandate of the statute, and was clearly erroneous.
It is claimed to have been justified by the effect of the act of April 12, 1862 (Ch. 197, p. 368.) The first section repeals the act of 1860, and another act not material to the present purpose. But that repeal was wholly prospective, and did not affect the punishment of offenses committed before such repeal. This is expressly declared by the second section, which is in these words: "No offense committed previous to the time when this statute shall take effect shall be affected by this act, except that where any punishment shall be mitigated by the provisions of this act, such provision shall control any judgment to be pronounced after the said act shall take effect for any offenses committed before that time."
It is argued that the word offense, as first used in the section, does not embrace the idea of punishment. But I am of opinion that such a construction would be altogether too narrow. The whole scope of the statute concerns the punishment of crimes, and when it is said that no offense committed before it should come into operation should be affected by it, the meaning is extremely clear, that the punishment which it prescribes should not be visited upon the *Page 135 
persons committing the offenses which, on account of the time they were committed, are excluded from its scope. If it were otherwise doubtful, the exception, which declares that a mitigated punishment should, notwithstanding the general language, be applied to the case of such former offenders, makes the sense very plain.
2. The remaining question is, whether the judgment should be reversed and the prisoner discharged, according to the former rule, or the record be remitted to the oyer and terminer to pass a legal sentence upon the conviction. This latter course is now authorized by statute. (Laws 1863, chap. 226, p. 406.) The conviction was legal, and the sentence only was erroneous. The only question is whether the act, having been passed after the conviction, though before judgment was given in the supreme court, could be applied to the case. I am of opinion that it can be applied. The forms of judicial proceedings are under the control of the legislature. The case is not within the constitutional provision which forbids a person being twice put in jeopardy for the same offense. A person is said to be put in jeopardy only when he is a second time tried upon a criminal accusation, but the term has no relation to the reversal of an erroneous judgment and pronouncing a legal one, pursuant to one legal conviction. It may be of some importance to inquire when the existing judgment was pronounced in the oyer and terminer in reference to the time of the passage of the act of 1863. The narrative part of the record would seem to show that it was on the 20th April, 1863, which is prior to the passage of the act. But the record also states that on the 25th June following, a motion was made in the oyer and terminer for the arrest of judgment, and that it was denied on the 3d day of August ensuing. Such a motion can only be made on the verdict, and it must be before judgment. Taking the record together, we must intend that the sentence was pronounced on or after the third day of August. The case, then, is *Page 136 
this: After the verdict had been given, and before sentence, the legislature declare, in effect, that when an erroneous judgment is given in a court of original criminal jurisdiction, the supreme court may on error reverse the judgment alone; but if there be no error in the trial or verdict, the record is to be remitted, to the end that a proper judgment may be pronounced. If it could be maintained that the legislature could not rightfully interfere after the judgment had been pronounced in such a manner as to deprive the prisoner of the full benefit of a writ of error under the existing laws, and of the right to have the judgment reversed and to be discharged, the principle would not aid the plaintiff in error, for such was not the order of the events. I conclude, therefore, that the supreme court should have reversed the judgment which was actually given, and have remitted the record to the oyer and terminer, with directions to pronounce the judgment prescribed by the act of 1860 — the form of which has been indicated. If I am sustained by my brethren in these views, such is the judgment which must be given on the writ of error.